**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**OCTOBER 6, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

In Re:

**FRITZE LLC,**

                Debtor.

**FRITZE LLC,**

                Plaintiff,

   v.

**KEYSPAN HOME ENERGY SERVICES, LLC,**

                Defendant.

Case No.:  07-19059  (DHS)

Adv. No.:  07-02113  (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Norris, McLaughlin & Marcus
Gary N. Marks, Esq.
721 Route 202-206, PO Box 1018
Somerville, NJ 08876
*Counsel for Plaintiff*


Wollmuth, Maher & Deutsch LLP
James N. Lawlor, Esq.
One Gateway Center
9th Floor
Newark, NJ 07102
*Counsel for Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are dueling motions for summary judgment. Fritze LLC (hereinafter "Fritze" or "Debtor" or "Plaintiff") filed a motion seeking summary judgment on its fraudulent transfer and avoidable preference claims against KeySpan Home Energy Services, LLC (hereinafter "KeySpan" or "Defendant"). KeySpan also filed a motion for summary judgment against Fritze seeking dismissal of the adversary complaint. Both parties have filed opposition to the respective motions with Fritze's opposition filed under seal.

The Court has jurisdiction over these motions pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**Statement of Facts**

**I.    Fritze's Statement of Facts**

On July 6, 2005, Fritze and KeySpan entered into a Sublease Agreement under which Fritze rented 41,424 square feet of real property located at 1 Chapin Road, Pine Brook, New Jersey ("Property"). *See Fritze's Rule 56.1 Statement of Undisputed Facts ("Fritze's 56.1 Stmt.")*, at ¶ 1. The agreement required Fritze to pay an annual sum of $258,900.00 in monthly installments of $21,575.00 plus utilities and additional rents pursuant to the Master Sublease between KeySpan and its sublessor. *Id.* at ¶ 2. On February 10, 2006, the parties entered into a Sublease Amendment whereby: (i) Fritze would pay $1.00 per annum for the year ending December 31, 2006; (ii) Fritze would pay $21,575.00 monthly for January 1, 2007 to July 6, 2007, the date when the Sublease expired. *Id.* at ¶¶ 3-4; *Compl.* at ¶¶ 12-14.

Due to defaults under the Sublease Agreement, Fritze owed KeySpan approximately $200,000.00. KeySpan commenced a lawsuit against Fritze in the Superior Court of New Jersey, Morris County, Law Division seeking a monetary judgment for the unpaid rent. *Fritze's 56.1 Stmt.* at ¶¶ 5-6. KeySpan also commenced an eviction suit in the Special Civil Part in April 2007. *Id.* at ¶ 6. In early May 2007, the parties engaged in settlement discussions with KeySpan proposing the following terms: (1) Fritze would pay $50,000.00 immediately; (2) Fritze would then pay $25,000.00 by June 15, 2007; and (3) the balance of arrears would be paid by August 15, 2007. *Id.* at ¶ 8. After further negotiations, Fritze's counsel at that time accepted KeySpan's proposal with the following modifications: (1) the balance of arrears would be due on September 15, 2007; (2) the second payment of $25,000.00 would be due on June 30, 2007; (3) Fritze would reduce at least fifty-percent (50%) of the rented space with a proportionate decrease in rent effective June 1, 2007; and (4) the immediate payment will be made upon satisfactory evidence that the pending state court litigations have been withdrawn. *Id.* at ¶9. KeySpan's counsel responded that "we are in complete agreement." *Id.* at ¶ 10.

On May 11, 2007, Fritze made the immediate payment of $50,000.00 and soon thereafter, KeySpan dismissed the state court litigations. *Id.* at ¶¶ 11-12. On June 8, 2007, KeySpan commenced a second summary dispossess action to evict the Debtor. *Id.* at ¶ 13. The Debtor filed its voluntary Chapter 11 petition on June 28, 2007 resulting in a stay of the state court action. *Id.* at ¶ 14. On July 19, 2007, KeySpan moved for stay relief to proceed with the summary dispossess action based upon the termination of the Sublease as of July 6, 2007 and that Fritze discontinued settlement discussions before the terms were finalized. *Id.* at ¶ 15. On August 30, 2007, the Honorable Novalyn L. Winfield entered an Order terminating the Sublease as of July 6, 2007,

providing for a payment schedule for Use and Occupancy, and reducing the rental space by fifty-percent with proportionate rent reduction. *Id.* at ¶17; *Order Resolving Mot. of KeySpan Home Energy Services LLC For Relief from Automatic Stay*, 07-19059 (DHS), Dkt. No. 64, August 30, 2007.

## II. KeySpan's Statement of Disputed and Additional Facts

Upon entering into the Sublease and First Amendment, Fritze failed to pay several months of Base Rent and Additional Rent, resulting in pre-petition arrearages of approximately $200,000.00. *Rule 56.1 Statement of Undisputed Facts on Behalf of KeySpan Home Energy Services LLC ("KeySpan's 56.1 Stmt.")*, at ¶ 6. KeySpan served Fritze with a Notice to Quit and Demand for Possession on March 2, 2007. *Id.* at 7. On April 13, 2007, due to outstanding Base Rent for March and April 2007 and Additional Rent outstanding since January 2007, Fritze owed KeySpan approximately $198,354.25. *Id.* at ¶ 9.

After KeySpan instituted the state court actions in April 2007, the parties negotiated a potential settlement in May whereby Fritze agreed to the arrearage amount of $241,504.25. *Id.* at ¶ 13. Additionally, as a condition to the settlement described above, KeySpan required Fritze to execute a warrant to confess judgment, a promissory note for the arrearages, and an acceptable second amendment to the Sublease (collectively referred to as "Settlement Documents"). *Id.* at ¶ 14. On May 10, 2007, KeySpan withdrew the summary dispossess action in reliance upon the agreement reached with Fritze. *Id*. at ¶ 15. On May 11, 2007, Fritze made the initial payment of $50,000.00 and met with KeySpan to discuss the rental reductions that were to be memorialized in a Second Amendment to the Sublease. *Id.* at ¶ 16. The receipt of the Settlement Payment and

5

Fritze's representations that it would fulfill the rest of the settlement conditions prompted KeySpan to dismiss the state court action seeking damages. *Id.* at ¶ 17.

Thereafter, negotiations over the remaining terms of the settlement failed. *Id.* at ¶ 18. Fritze refused to execute the Settlement Documents and to pay further rent. *Id.* Due to these events, on June 8, 2007, KeySpan informed Fritze that it would institute new summary dispossess and arrearages actions in the state court. *Id.* at ¶ 19. In the second arrearages action, KeySpan also sought attorneys' fees and costs in addition to lawful damages. *Id.* at ¶ 20.

As KeySpan argued in its Motion for Stay Relief, the Sublease expired on July 5, 2007, leaving Frizte as a holdover tenant. *Id.* at ¶ 24. KeySpan contended that the automatic stay did not apply since the lease terminated by expiration of the lease term pre-petition or alternatively that cause existed for stay relief. *Id.* at ¶ 25. KeySpan also contended that the settlement agreement between the parties was invalid because it was never finalized due to Fritze's breaking off settlement talks and "lack of mutuality of accord, misrepresentation and non-fulfillment of conditions precedent for the agreement." *Id.* at ¶ 26. In opposition to the stay relief motion, Fritze argued that there was an enforceable settlement in place. *Id.* at ¶ 27. The Honorable Novalyn L. Winfield heard oral argument and determined that a partial settlement was reached between the parties whereby Fritze made the immediately $50,000.00 payment in exchange for dismissal of the state court actions and the continued rental of the premises. *Id.* at ¶ 30. Judge Winfield also determined that the Sublease terminated as of July 6, 2007 and permitted the Debtor to remain on the premises until September 30, 2007, which was ultimately extended to October 31, 2007 by this Court. *Id.* at ¶ 31. On May 9, 2008, KeySpan filed an administrative expense claim for $126,679.50 for post-petition

attorneys' fees, damages and costs resulting from Fritze's failure to pay rent and other lease violations pursuant to Section 6.3 of the Sublease. *Id.* at ¶ 32.

## Discussion

### I.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned

on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

## II.     Sections 548 and 550—Fraudulent Transfer

The fraudulent transfer provisions, found at section 548 of the Bankruptcy Code, allow a trustee or debtor-in-possession to avoid a transfer made within two years of the petition date if the transfer was due to actual or constructive fraud.[1] *See* 11 U.S.C. § 548(a)(1) (2008); *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 210 (3d Cir. 2006). The purpose of section 548 "aims to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away." *Fruehauf*, 444 F.3d at 210 (citing *In re PWS Holding Corp.*, 303 F.3d 308, 313 (3d Cir. 2002)).

Constructive fraudulent transfers under Section 548(a)(1)(B) require:

---

[1] Section 548(a)(1) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to allow the avoidance of transfers within two years from the Petition Date in comparison to one year. *See Fruehauf*, 444 F.3d 203, 210 n.4 (3d Cir. 2006). Although the amendment clearly applies to the instant adversary proceeding commenced in 2008, pre-BAPCPA cases addressing other elements of such claim are still relevant and applicable.

> (a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
>> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>>> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>>
>>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>>
>>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured ; or
>>>
>>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). The burden of proof on a fraudulent transfer action lies with the party bringing the claims and must be proven by a preponderance of the evidence. *See Fruehauf*, 444. F.3d at 211. Once the trustee or debtor-in-possession satisfies its burden under section 548, section 550 provides for the mechanism by which the bankruptcy estate may recover such property or its value for the benefit of the estate and its creditors. *See* 11 U.S.C. § 550; *EBC I, Inc. v. Am. Online, Inc. (In re EBC I., Inc.)*, 380 B.R. 348, 362 (Bankr. D. Del. 2008).

In the instant adversary proceeding, Fritze, as Plaintiff, bears the burden of proving its section 548 claim and must demonstrate:

9

> (1) [T]he debtor had an interest in property; (2) a transfer of that interest occurred within [two] year[s] of the bankruptcy filing; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the transfer resulted in no value for the debtor or the value received was not 'reasonably equivalent' to the value of the relinquished property interest.

*Fruehauf*, at 210-11. The parties do not dispute that a transfer of $50,000.00 was made by the Debtor, which constituted a property interest, and that such transfer occurred within two years of the petition date. KeySpan also has not contested that Fritze was insolvent at the time of transfer. Thus, the Court finds that Fritze was in fact insolvent at the time of the transfer for the purposes of section 548 and will focus on whether reasonably equivalent value was transferred to Fritze.

Reasonably equivalent value is not expressly defined under the Bankruptcy Code. *See Peltz v. Hatten*, 279 B.R. 710, 736 (D. Del. 2002). Courts utilize a "totality of the circumstances" approach when examining whether reasonably equivalent value has been exchanged in the transaction at issue. *See id.* (citing *Mellon Bank, N.A. v. Official Committee of Unsecured Creditors of R.M.L. Inc. (In re R.M.L. Inc.)*, 92 F.3d 19, 148-49 (3d Cir. 1996)); *see also Fruehauf*, 444 F.3d at 212. As the purpose of section 548 is preservation of the estate, the totality of the circumstances analysis must be conducted from the vantage point of the creditors. *See id.* at 736; *see also Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 646b (3d Cir. 1991). Totality of the circumstances is a factor analysis including consideration of good faith, difference between the amount paid and the fair market value, existence of an arm's length transaction, and indirect benefits. However, it is important to recognize that whether any value was transferred to the debtor must first be determined before examining whether it was reasonably equivalent value or roughly the value it gave. *See Fruehauf*, 444 F.3d at 212-13 (citing *In re R.M.L., Inc.*, 92 F.3d at 150, 152; *Metro Communications*, 945 F.2d at 647).

Direct benefits are easily calculated particularly when cash or its equivalent is transferred to a debtor. However, such is not the case with indirect benefits. The Third Circuit articulated the following with regards to the transfer of indirect benefits:

> First, in those cases where the plaintiff contends that a transfer resulted in no value to the debtor, the plaintiff must ordinarily prove that the calculated value of the benefit is zero. If no calculations are offered into evidence, and there is some evidence that the benefit conferred value, the plaintiff cannot satisfy its burden of proof. Second, where the value of an intangible benefit *could* equal or exceed the value surrendered by the debtor, precise calculations are essential to allow the court to determine equivalency properly.
>
> But this general rule yields to common sense: in those cases where a court has sufficient evidence to conclude, based on a totality of the circumstances, that the benefits to the debtor are minimal and certainly not equivalent to the value of a substantial outlay of assets, the plaintiff need not prove the precise value of the benefit because a calculation is unnecessary to the court's analysis.

*Fruehauf*, 444 F.3d at 214 (clarifying the Court's ruling in *In re R.M.L., Inc.*).

In the instant matter, there is no dispute that Fritze transferred $50,000.00 in exchange for dismissal of the state court litigations and renegotiation of the Sublease. In its motion and opposition, Fritze argues that it received no benefit because KeySpan failed to comply with the negotiated settlement provisions and commenced second summary dispossess and damages proceedings resulting in the bankruptcy filing. KeySpan counters that the dismissal of the first set of litigations and the continued use of the premises without rental payments are the significant benefits it conferred upon Fritze and such benefits were roughly of the same value as the $50,000.00 payment.

Fritze relies upon *Schwab v. Birches III Prop. Owners Assoc., Inc. (In re Hefner)* where the debtor-husband was treasurer of a property owners association and, following an audit, criminal

11

charges were filed against him as well as a civil action for embezzlement. *Schwab*, 262 B.R. 61, 63 (Bankr. M.D. Pa. Wilkes-Barre Div. 2001). The association and the debtor-husband negotiated a settlement by which the debtor-husband would pay $28,000 upon signing the agreement and would transfer real property to the association. *Id.* The real property was jointly owned with his debtor-wife and the agreement specifically stated that the debtor-wife agreed to the transfer. *Id.* The trustee for the debtor-wife argued that both conveyances were fraudulent as to the wife's creditors because the wife received less than reasonably equivalent value since the settlement resolved criminal and civil actions brought only against the husband. *Id.* at 64. The association argued that the settlement also provided that neither criminal nor civil charges would be brought against the wife resulting in her receipt of value since she had knowledge of the embezzlement and was unjustly enriched. *Id.* Although the court noted that a release of claims may be considered reasonably equivalent value, it determined that the written agreement memorialized the terms between the association and the husband and that the mention of the wife was only an accommodation to facilitate the transfer of the real property. *Id.* at 65, 66. Moreover, the court found the record showed that a criminal action against the wife would have been ineffective and a civil judgment for unjust enrichment was speculative as funds could not be traced to any account of the wife. *Id.* at 66. Thus, the court found that the wife's trustee satisfied his burden of proving a fraudulent transfer. *Id.* at 67.

In reliance on *Schwab*, Fritze contends that objectively no value was transferred to it in exchange for the $50,000.00 payment it made. KeySpan counters that the dismissal of the litigations was the value conferred upon Fritze, the same as the *Schwab* court recognized. *See id.* at 65. Although the *Schwab* court noted that a release of claims may constitute reasonably equivalent value, the facts of *Schwab* are dissimilar to the facts at hand because in the instant matter $50,000.00

12

was paid by the Debtor, the actions were dismissed, and the Debtor was allowed to remain in possession.    To counter, KeySpan relies upon *Erie Marine Enters., Inc. v. Algoma Central Marine (In re Erie Marine Enters., Inc.)*, 213 B.R. 799, 801 (Bankr. W.D. Pa. 1997). Erie operated a dry dock where it serviced two Algoma ships. Upon completion and receipt of invoices for work completed, Algoma disputed the amount, but eventually the parties agreed upon an amount accepted by the debtor. *Id.* at 802-03. The court found that a compromise of a dispute could supply the element of consideration for a contract. *Id.* at 803. The court also noted "[t]he sufficiency of the consideration for a compromise is not to be determined by the soundness of the original claim of either party. The very object of compromise is to avoid the risk or trouble of that question." *Id.* (citing *In re Pinto Trucking Serv., Inc.*, 93 B.R. 379, 389 (Bankr. E.D. Pa. 1988). The court found that the settlement was the result of arm's-length negotiations even though the parties felt they were underpaid and overpaid respectively. *Id.* at 804. Despite that, reasonably equivalent value was received by the debtor for the release of its contested claims. *Id.* Using *Erie Marine*, KeySpan focuses on the arm's-length negotiations and that the dismissal of the state court actions was reasonable in exchange for the $50,000.00 payment. Furthermore, Fritze continued to use and occupy the premises without rental payments, which constitutes more than reasonably equivalent value.

KeySpan also relies upon *Adv. Telecomm. Network, Inc. v. Allen (In re Adv. Telecomm. Network, Inc.)*. In that case, former shareholders of the debtors settled shareholder litigation with the debtor-corporation. *Adv. Telecomm.*, 321 B.R. 308, 315 (Bankr. M.D. Fla. Orlando Div. 2005). The debtor-corporation argued that it received nothing in return for the millions it paid under the settlement agreement. *Id.* at 331. The court disagreed because the debtor-corporation was a named

13

defendant in the litigation and was directly liable on several claims regardless of where the payment funds were generated. *Id.* The litigation was settled in the midst of trial thus further legal fees would be de minimis. *Id.* Additionally, an appeal would likely have occurred. *Id.* Thus, the court concluded that the settlement brought a final resolution while "[c]ontinuation of the litigation brought uncertainty, the possibility of an unfavorable judgment against [the debtor], and a guarantee of substantial attorney fees." *Id.* The court also determined that settling the dispute between the shareholders allowed the corporation to focus on its operations and profitability, which was an indirect benefit. *Id.* at 331-32.

In the alternative, KeySpan argues that the settlement agreement was on account of an outstanding debt owed and thus constitutes a transfer of reasonably equivalent value. KeySpan submits that the $50,000.00 payment reduced Fritze's obligations on a dollar-for-dollar basis. Fritze counters in its sealed opposition that satisfaction of an antecedent debt provided in good faith may constitute consideration. It also maintains that the unpaid rental arrearage and resulting bankruptcy stemmed from KeySpan failing to defend certain lawsuits and Fritze's inability to collect on accounts receivable sold by KeySpan under the Asset Purchase Agreement and settlement agreement. Courts have held that securing an antecedent debt can constitute reasonably equivalent value. *See Trustee v. Casale (In re Phillips Group, Inc.)*, 382 B.R. 876, 887 (Bankr. W.D. Pa. 2008). However, "it is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value." *Official Committee of Unsecured Creditors of R.M.L., Inc. v. Conceria Sabrina S.P.A. (In re R.M.L., Inc.)*, 195 B.R. 608, 618 (Bankr. M.D. Pa. 1996). Finally, courts have held that reasonably equivalent value is largely a factual question. *See Glassman v. Heimbach, Spitko, and Hechman (In re Spitko)*, 2007 Bankr. LEXIS 2050, at *49-50 (Bankr. E.D.

Pa. June 11, 2007); *see also Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 726 (Bankr. N.D. Ill., E. Div. Dec. 12, 2006); *Forman v. Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co., Inc.)*, 254 B.R. 104, 115 (Bankr. D.N.J. 1999).

Here, the record reflects an arm's-length agreement between the parties whereby $50,000.00 was to be paid by the Debtor in consideration for dismissal of state court litigations seeking $200,000.00 and possession of the premises, significant payment terms for the balance due, and possession going forward, with a reduction in space to be determined. The record further reflects a failure by the Debtor to make additional payments under the settlement and a continued failure to pay post-petition rent resulting in an administrative proof of claim being filed seeking payment of $126,679.50.

It is difficult to appreciate the Debtor's argument that a fraudulent conveyance took place because it failed to receive reasonable equivalent value for the $50,000.00 payment. The settlement, even if partial and never completed, was the result of an ongoing negotiation from which both parties benefitted. Keyspan received $50,000.00 and the promise of future payments. The Debtor received immediate dismissal of litigations (which it appeared to have little defense against), agreeable payment terms going forward, and the right to remain in possession. The benefits going to the Debtor satisfied, in this Court's view, reasonable equivalent value for the $50,000.00 payment made to Keyspan. This pre-petition settlement payment was made in exchange for compromise of a dispute and resulted in dismissal of litigations. Accordingly, the payment does not constitute a fraudulent transfer and summary judgment is hereby granted to defendant KeySpan on Counts II and III of the Complaint.

**III.    Sections 547(b) and 550 – Avoidable Preference**

Section 547(b) specifically states:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>     (A) on or within 90 days before the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if –
>     (A) the case were a case under Chapter 7 of this title
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The purpose of section 547's avoidance power is "to foster equality of treatment among creditors and to discourage creditors from incapacitating a firm by racing to attach its assets shortly before bankruptcy." *Trustee v. Mappa (In re Pineview Care Ctr., Inc.)*, 152 B.R. 703, 705 (D.N.J. 1993) (citation omitted). Pursuant to section 547(g), the trustee or the debtor-in-possession bears the burden of proving avoidability of a transfer under section 547(b) by a preponderance of the evidence. *See* 11 U.S.C. § 547(g); *Lease-a-Fleet, Inc. v. Mitsubishi Acceptance Corp., (In re Lease-a-Fleet, Inc.)*, 151 B.R. 341, 349 (Bankr. E.D. Pa. 1993); *Aspen Data Graphics, Inc. v. Boulton (In re Aspen Data Graphics, Inc.)*, 109 B.R. 677, 681 (Bankr. E.D. Pa. 1990)*; see also* 11 U.S.C. § 1107 (providing debtor-in-possession with all rights, duties and

functions of the trustee). Here, it is undisputed that (i) the transfer occurred within the ninety days prior to the Petition Date, (ii) the Debtor was insolvent, and (iii) the transfer was for the benefit of a creditor. Furthermore, KeySpan does not dispute that it received more than creditors would based upon Fritze's liquidation analysis attached to its Chapter 11 Plan showing no dividend for creditors. *See Pls. Bf.* at 9. Thus, with respect to the section 547 claim, the Court will focus on whether the transfer was made on account of an antecedent debt and the defenses raised by KeySpan, namely, the contemporaneous exchange of value or, alternatively, complete new value provided.

KeySpan relies upon *Lewis v. Diethorn* for the proposition that a settlement payment made in exchange for the termination of a lawsuit does not constitute an avoidable preference, whereas Fritze argues that it did not receive a termination of a lawsuit since KeySpan reinstituted state court actions. In *Lewis*, the Diethorns entered into a contract with the debtor-developer. *Lewis v. Diethorn*, 893 F.2d 648, 648 (3d Cir. 1990). The Diethorns instituted a state court equity action seeking specific performance of the originally contracted for workmanship and a *lis pendens* was indexed. *Id.* Approximately eight months later, the parties entered into a settlement agreement whereby the developer returned $3000.00 earnest money and paid an additional $15,500.00 in exchange for the Diethorns discontinuing the state court litigations and lifting the *lis pendens*. *Id.* Soon thereafter, the developer filed for Chapter 7 protection. *Id.* The court determined that the transfer of $15,500.00 from the developer to Diethorns was not on the account of an antecedent debt owed by the debtor. *Id.* at 650. The court instead found that the $15,500.00 paid to the Diethorns was in exchange for their termination of the lawsuit and removal of the *lis pendens*. *Id.* The debtor received freedom from litigation and the increase in property value from the removal of the *lis*

*pendens*. *Id.* In the instant matter, Fritze received dismissal of litigation payment terms and retention of possession of the premises.

KeySpan also defends against Fritze's claims with a section 547(c)(1) contemporaneous exchange of new value defense. Section 547(c)(1) of the Bankruptcy Code provides that the trustee may not avoid a transfer to the extent that such transfer was intended by the debtor and creditor to be a contemporaneous exchange for new value. 11 U.S.C. § 547(c)(1). The creditor is required to demonstrate: (1) it provided new value to the debtor; (2) the parties intended a contemporaneous exchange; and (3) the exchanges were in fact contemporaneous. *See Harbour v. ABX Enters. (In re APS Holding Corp.)*, 282 B.R. 795, 800 (Bankr. D. Del. 2002). Section 547(a)(2) defines 'new value' as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2). To be afforded a section 547(c)(1) defense, a transferee must show that the debtor's estate was materially augmented by the transfer post-petition. *In re Kumar Bavishi & Assoc.*, 906 F.2d 942, 946, 950 (3d Cir. 1990).

Fritze concedes that if any new value was transferred then it would serve as an offset to the preference claim. The new value Fritze refers to is its occupancy from May 11, 2007 through the petition date, June 28, 2007. According to Fritze's calculations, the offset would be $9,708.75 and thus the preference claim would be $40,291.25. KeySpan also submits that *Lewis* supports its defense in total because the court found that the agreement to terminate the state court lawsuit and remove the *lis pendens* in exchange for the payment of $15,500.00 to the Diethorns satisfied the

intention to be a contemporaneous exchange for new value and was in fact substantially contemporaneous. *See Lewis*, 893 F.2d at 650.

KeySpan also raises the subsequent new value exception under section 547(c)(4) contending that by dismissing the state court actions and allowing Fritze continued occupancy without rent was the new value conferred. The case law is clear that a debtor's continued use of a leased premises constitutes an independent basis for a finding of new value. *See Ross*, 1997 WL 331830, at *4; *Southern Technical College, Inc. v. Hood*, 89 F.3d 1381, 1384-85 (8th Cir. 1996) ("Each month, a lessee receives new value from its lessor when it continues to use and occupy the rented premises."); *Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365, 371 (Bankr. S.D.N.Y. 1986) ("The new value . . . is the debtor's right to occupancy for that month."); *Brown v. Morton (In re Workboats Northwest, Inc.)*, 201 B.R. 563, 566 (Bankr. W.D. Wash. 1996) ("a majority of courts addressing the subject have also held that a landlord may set off, as new value, delinquent rent accruing subsequent to preferential payments"); *Everlock Fastening Sys., Inc. v. Health Alliance Plan (In re Everlock Fastening Sys., Inc.)*, 171 B.R. 251, 255 (Bankr. E.D. Mich. 1994); *see also In re Discovery Zone, Inc.*, 300 B.R. 856, 860-61 (Bankr. D. Del. 2003), *aff'd*, 2004 U.S. Dist. LEXIS 20575, at *2-3 (D. Del. Oct. 5, 2004) (holding continued use of trademarks constituted new value). KeySpan also submits that intention is irrelevant to section 547(c)(4) and the analysis should focus on whether the debtor received a benefit from the creditor post-transfer that offset the value the creditor received from the preferential payment. KeySpan states that the subsequent new value exception requires the following:

> First, the creditor must have received a transfer that is otherwise voidable as a preference under [section] 547(b). Second, after receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis. Third, the

> debtor must not have fully compensated the creditor for the 'new value' as of the date it filed its bankruptcy petition. If a creditor satisfies these elements, it is entitled to set off the amount of the 'new value' which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received.

*New York City Shoes, Inc. v. Bentley Int'l (In re New York City Shoes, Inc.)*, 880 F.2d 679, 680 (3d Cir. 1989). In the instant case, the parties agree that rent went unpaid but they dispute the basis for the withheld rent. Fritze's sealed opposition indicates that negotiations on the second amendment to the Sublease dissolved, which were to memorialize the settlement terms regarding rental space and rent reductions. Because of this factual dispute, summary judgment cannot be granted with respect to a new value exception.

Avoidance actions are to foster equality among creditors. The *Lewis* case makes it clear that a settlement that includes termination of a lawsuit does not constitute an avoidable preference. Here, the Debtor received a termination of the state court litigations, payment terms, and an extension of possession, in exchange for $50,000.00. Clearly, this was intended to be a contemporaneous exchange of new value. As such, it constitutes a defense to the Debtor's fraudulent conveyance count. Summary judgment is hereby granted in favor of KeySpan and the Complaint is hereby dismissed.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

/s/ *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: October 6, 2009